IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CR-370-FL-1

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>CHRISTOPHER KEVIN MORRIS, )<br>)<br>Defendant. ) | MEMORANDUM OPINION |

This matter came before the court for trial on February 16-17, 2023. The court memorializes herein the court's reasons for granting the government's motion for evidence under Rule 404(b) and denying defendant's motion in limine regarding the same (DE 57, 60), and for sustaining defendant's objections to certain jury instructions on the intent element of the charged offense.

**BACKGROUND**

Superseding indictment filed December 7, 2022, charged defendant as follows:

Beginning on or about July 27, 2021, and continuing until on or about October 28, 2021, in the Eastern District of North Carolina and elsewhere, the defendant, with the intent to harass and intimidate another person, K.L., used an interactive computer service, electronic communication service, electronic communication service of interstate commerce, and a facility of interstate and foreign commerce, to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to K.L., to wit: sending emails from spoofed accounts to K.L. and others alleging K.L. is a child molester, calling K.L. a "queer" and a "piece of dog shit," asserting that K.L. was beat up a lot in high school, making offensive statements, claiming K.L. used a racially offensive term, creating a fake LinkedIn.com account purporting to be K.L. that describes K.L. as a child molester and rapist, and creating a fake GitHub.com account purporting to be K.L. that describes K.L. as a sexual deviant who "love[s] having sex with small children" and used that account to publicly post source code

owned by K.L.'s employer, all in violation of Title 18, United States Code, section 2261A(2)(B) and 2261(b)(5).

(DE 50) (hereinafter, the "indictment"). Prior to trial, the government filed a motion in limine, captioned as a notice under Federal Rule of Evidence 404(b), (DE 50), requesting a ruling allowing the government to introduce evidence of defendant's communications sent to two other employees working at the same company as defendant, Tom Malick ("Malick") and Allen Badeau ("Badeau"), but not directed at or referencing the victim K.L. (Ken Lane), during the time period of the communications referenced in the indictment (hereinafter, the "subject communications"). Defendant filed a motion in limine in response to the government's, seeking exclusion of the subject communications. (DE 60). At a conference with the attorneys, prior to trial, the court allowed the government's motion and denied defendant's motion, subject to limiting instructions to be given to the jury.

The court also filed proposed jury instructions for consideration by the parties prior to trial. (DE 65). During a conference with the parties following conclusion of the government's evidence on February 16, 2023, defendant objected to a portion of the court's proposed instruction providing details regarding the third, intent, element of the charged offense. The government also questioned whether it could reference the subject communications in its closing argument, to which defendant objected. The court took the objections under advisement. Prior to closing arguments, the court overruled defendant's objection regarding references in argument to the subject communications, and the court granted defendant's objection to the court's proposed instruction and modified its instruction accordingly. The court also narrowed the instruction further upon receipt of a question by the jury, as detailed further herein.

At conclusion of trial on February 17, 2023, the jury found defendant guilty of the charged offense.

**COURT'S DISCUSSION**

A.   Motions In Limine

The government asserted, as an initial matter, that the subject communications did not fall within Rule 404(b)'s limitations because they were "intrinsic to the story of the crime." (DE 57 at 7). Second, the government argued that they were admissible pursuant to Rule 404(b) because they showed defendant's motive and intent. The court sets forth first the applicable law pertaining to each theory advanced by the government, followed by analysis of the same.

   1.   Applicable Law

      a.   Intrinsic to the Story of the Crime

With respect to the government's initial argument, "Rule 404(b) only applies . . . to evidence relating to acts extrinsic to the conduct being prosecuted." United States v. Cooper, 482 F.3d 658, 663 (4th Cir. 2007). "Evidence intrinsic to the story of the crime," or "evidence [that] served to complete the story" of a charged offense, "does not fall under Rule 404(b)'s prohibition." Id. (quoting United States v. Lipford, 203 F.3d 259, 268 (4th Cir.2000)); see, e.g., Lipford, 203 F.3d at 268 (evidence "served to complete the story" with respect to conspiracy charge). "Even where evidence predates the time period of the indictment, the government is allowed to provide context relevant to the criminal charges." Id.

"Evidence of uncharged conduct is not other crimes evidence subject to Rule 404 if the uncharged conduct arose out of the same series of transactions as the charged offense, or if evidence of the uncharged conduct is necessary to complete the story of the crime on trial." United States v. Palacios, 677 F.3d 234, 245 (4th Cir. 2012). "Other criminal acts are intrinsic when they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." United States v. Chin, 83 F.3d 83, 88 (4th Cir.

3

1996); United States v. Siegel, 536 F.3d 306, 316 (4th Cir. 2008) (other crimes must be "necessary" to complete story of crime on trial). "[B]ad acts are inextricably intertwined with the evidence regarding the charged offense if they form an integral and natural part of the witness's accounts of the circumstances surrounding the charged offense." United States v. Denton, 944 F.3d 170, 186 (4th Cir. 2019). "[W]here testimony is admitted as to acts intrinsic to the crime charged, and is not admitted solely to demonstrate bad character, it is admissible." Chin, 83 F.3d at 88.

For example, in Denton, the Fourth Circuit held that a defendant's "treatment of [a victim not named in the indictment] was part of his pattern of threatening and violent conduct towards the men that his ex-wife [] dated and thus provided context to the explosive offenses." 944 F.3d at 186. As such, the court held, the "bad acts evidence" was "intrinsic to the charged offense" and thus did not "fall under Rule 404(b)'s limitations on admissible evidence." Id.

b. Rule 404(b)

With respect to the Rule 404(b) analysis, the United States Court of Appeals for the Fourth Circuit has articulated the test of admissibility of Rule 404(b) evidence as follows:

> evidence of prior acts becomes admissible under Rules 404(b) and 403 if it meets the following criteria: (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997).

"Rule 404(b) prohibits evidence of other crimes or bad acts to show bad character or propensity to break the law." United States v. Young, 248 F.3d 260, 271 (4th Cir. 2001). However, "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent,

4

preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  "Rule 404(b) is viewed as an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition."  Young, 248 F.3d at 271 (4th Cir. 2001) (internal quotation marks omitted). "To be admissible under Rule 404(b), evidence must be (1) relevant to an issue other than character; (2) necessary; and (3) reliable."  United States v. Siegel, 536 F.3d 306, 317 (4th Cir. 2008) (internal quotation marks omitted). Additionally, evidence should be excluded if its probative value is substantially outweighed by its unfair prejudice to the defendant.  United States v. Johnson, 617 F.3d 286, 296–97 (4th Cir. 2010).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Evidence is necessary where it "furnishes part of the context of the crime."  United States v. Rawle, 845 F.2d 1244, 1247 n.4 (4th Cir. 1988).  "The more closely that the prior act is related to the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the prior act."  United States v. McBride, 676 F.3d 385, 397 (4th Cir. 2012).

Evidence is reliable unless it is "so preposterous that it could not be believed by a rational and properly instructed juror."  United States v. Aramony, 88 F.3d 1369, 1378 (4th Cir. 1996). Finally, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403; United States v. Masters, 622 F.2d 83, 87–88 (4th Cir. 1980).

5

Case 5:21-cr-00370-FL   Document 82   Filed 03/02/23   Page 5 of 13

2. Application

    a. Intrinsic to the Story of the Crime

Here, the subject communications were "intrinsic to the story of the crime," or "evidence [that] serve[] to complete the story" of the charged offense, Cooper, 482 F.3d at 663, because they were inextricably intertwined with the communications charged in the indictment, and part of a single criminal episode and spree. The subject communications "form[ed] an integral and natural part of the witness's accounts of the circumstances surrounding the charged offense." Denton, 944 F.3d at 186.

It would have been illogical and unnatural for the government to present the story of the instant offense without reference to the subject communications, given that all the communications arose out of a single initial exchange between Ken Lane and defendant while engaged in the coordinated joint project between their respective companies, NCI and Tanjo. The subject communications took place in the same time period as communications made to the victim, Ken Lane. Moreover, all the communications showed how defendant's conduct escalated from the initial exchange, through the time period of a requested apology, defendant's removal from the project, termination, and arrest.

In this respect, the subject communications were not "prior" bad acts or acts that "predate[d] the time period of the indictment." Cooper, 482 F.3d at 663. They were "inextricably intertwined" and "part of a single criminal episode" with communications charged in the indictment because they arose out of the same series of transactions as the charged offense. Chin, 83 F.3d at 88. Accordingly, evidence regarding the subject communications properly was admitted subject to the court's limiting instruction.

6

b. Rule 404(b)

The subject communications also properly were admitted under Rule 404(b) standards. Such communications showed defendant's motive and intent to harass and intimidate Ken Lane, including by showing defendant was not merely joking, or communicating in some other innocent way, and that he acted in accordance with a common purpose and plan, and not by accident. They also tended to show that defendant targeted Ken Lane, along with Badeau and Malick, with a goal cause substantial emotional distress. In particular, the subject communications could show, in part, that Ken Lane knew that others were receiving harassing and intimidating messages arising out of their initial exchange, and that Ken Lane had reason to be emotionally distressed by the scope of the conduct, and to be in fear or apprehension of what defendant could do to injure him.

Defendant argued that because the parties stipulated that all the messages were in fact sent by defendant, the subject communications were not necessary to establish defendant's identity. The government did not need to rely upon identity, however, as a purpose for their admission. Defendant also argued that the subject communications did not show defendant's intent or motive for the specific offense under consideration in the indictment, which was limited by its terms to the victim, Ken Lane. However, the intent that the government was required to establish was defendant's intent to "cause his victim[] serious harm." United States v. Shrader, 675 F.3d 300, 311 (4th Cir. 2012). "[A] defendant must act with the specific intent . . . to cause distress to a particular individual." Id. at 313. Further, the law protects "victims whose anguish is the result of persistent or repetitive conduct on the part of a harasser," and it "remains open to a defendant to argue that the charged acts were innocent or mistaken." Id. at 312.

The subject communications, while not directed to the victim, Ken Lane, nonetheless tended to show that defendant was intending to inflict harm, and had a motive to inflict such harm

7

on all those connected to the initial communication with Ken Lane. They also showed defendant's mode of operating through disguised emails and postings, all flowing and arising out of the initial interaction with Ken Lane. While defendant argues that the subject communications "would conflate several stories," (DE 60 at 4), exclusion would instead artificially separate and isolate the subject communications, where they are probative to defendant's motive and intent.

Moreover, several cautionary instructions limited the scope of the jury's consideration of the evidence of the subject communications. First, the court instructed the government not to mention the subject communications during its opening argument. Second, the court instructed the jury, prior to the testimony of Malick and Badeau, that "certain questions may be asked that elicit information concerning other acts allegedly undertaken by this defendant." The court instructed the jury that it "may consider that evidence in your deliberations for the limited purpose of completing the story of the crime charged in this case and not to demonstrate any bad character on the part of the defendant, nor may [it] consider evidence that is not related to the actions of the defendant concerning Mr. Lane for determining defendant's culpability for any acts or crimes not alleged in the indictment." This instruction followed directly from the principles set forth in Fourth Circuit's opinion in Chin. 83 F.3d at 88.

Third, the court made clear to the jury in its closing instructions that defendant was on trial only for the charged offense, and that the subject communications could only be considered for a limited purpose: "If the jury should find beyond a reasonable doubt from other evidence in the case that defendant did the acts alleged in the indictment, the jury may then consider evidence as to an alleged act of a like nature in determining the state of mind or intent with which defendant actually did the acts charged in the indictment." (Jury Instructions (DE 76) at 17). This instruction also was drawn from Fourth Circuit opinions regarding Rule 404(b) instructions. See, e.g., United

8

Case 5:21-cr-00370-FL    Document 82    Filed 03/02/23    Page 8 of 13

States v. Cowden, 882 F.3d 464, 473 (4th Cir. 2018) ("[A]ny prejudicial effect was reduced by the district court's issuance of two sets of limiting instructions, one given after the witnesses testified and the other given as part of the complete set of jury instructions at the conclusion of the evidence"); United States v. Hall, 858 F.3d 254, 279 (4th Cir. 2017) ("[L]imiting instructions serve as additional protection against undue prejudice."); see also United States v. Mudlock, 483 F. App'x 823, 830 (4th Cir. 2012) ("[W]e hold that this evidence was admitted as to acts intrinsic to the crime charged, and not admitted solely to demonstrate bad character"; "[m]oreover, to assure that the jury did not consider the evidence for anything but Mudlock's state of mind, the district court gave a limiting instruction to the jury.").

In sum, evidence and argument regarding the subject communications, subject to consideration in accordance with the court's limiting instructions, properly was admitted at trial.

B. Instructions Regarding Intent Element

The instruction proposed by the court prior to trial, concerning the definitions of terms used to describe the third element of the charged offense, intent to harass or intimidate, provided as follows:

> With respect to the third element, in order for you to find that the defendant acted intentionally you must find that he acted voluntarily and intelligently, not by ignorance, accident or mistake, and with the specific purpose to harass or intimidate K.L.
>
> For purposes of this element, "intent to harass" means the specific intent to cause K.L. substantial emotional distress by tormenting, persecuting, defaming, <u>or persistently bothering or disturbing</u>, K.L., with no legitimate purpose.
>
> Intent "to intimidate" means to act with the specific intent to cause K.L. substantial emotional distress by putting K.L. in fear or apprehension of injury.

(Sealed Notice (DE 65) at 27) (emphasis added).

Defendant specifically objected to the language emphasized above, "persistently bothering or disturbing," on the basis that it "may allow speech that is constitutionally protected to become

9

criminalized." The government, by contrast, took the position that the language was appropriate to remain in because "Fourth Circuit case law is broader even than" what the court had proposed.

After further deliberation during the evening recess, the court sustained defendant's objection and gave an instruction to the jury with the objected language omitted. The court's reasoning for omitting that language was as follows. As an initial matter, the court recognized that, according to the Fourth Circuit's opinion in United States v. Shrader, 675 F.3d 300 (4th Cir. 2012), "a common sense reading of the statute adequately defines the prohibited conduct," and that "'Harass' and 'intimidate' are not obscure words." Id. at 310. The court there reasoned that "[m]ost people would readily understand the former to mean "to disturb persistently; torment, as with troubles or cares; bother continually; pester; persecute," and the latter to mean "to make timid; fill with fear." Id. (emphasis added).

The statute as applied in Shrader, however, has since been amended. The defendant there was charged with conduct that included placing a victim in "fear of the death of or serious bodily injury," and with conduct that in fact "caus[ed] substantial emotional distress to the intended victim." Id. Moreover, Shrader addressed whether the statute was "unconstitutionally vague," id. at 309, but it did not address jury instructions or whether the statute was "overbroad" in capturing speech protected by the First Amendment, which other courts of appeals more recently have addressed in limiting the breadth of the intent element.

For example, the Third Circuit held recently that to overcome an overbreadth challenge under the First Amendment, the court would employ a "narrow reading[]" of the statute using the following limited definitions: "To 'intimidate,' . . . a defendant must put the victim in fear of death or bodily injury." United States v. Yung, 37 F.4th 70, 80 (3rd Cir. 2022). "And to 'harass,' he must distress the victim by threatening, intimidating, or the like." Id. The Eleventh Circuit

approved jury instructions of this element stating: "Intent to 'harass' means to act with the specific intent or purpose of causing an adverse emotional reaction in a specific person, not merely speech that happens to cause annoyance or insult." United States v. Fleury, 20 F.4th 1353, 1370 (11th Cir. 2021). At the same time, the court in Fleury stated that an overbroad interpretation of the statute can impinge upon First Amendment rights if it goes beyond criminalizing "true threats" or "obscenity, defamation, [and] speech integral to criminal conduct." Fleury, 20 F.4th at 1365 (emphasis added). Yung also recognized that "the First Amendment does not protect defaming a private person." 37 F.4th at 75. Along these lines, the Ninth Circuit also defined "harass" for purposes of this statute to be conduct that "causes substantial emotional distress in that person and serves no legitimate purpose." United States v. Osinger, 753 F.3d 939, 945 (9th Cir. 2014). The First Circuit also has stated "the text of the law is clear in that it targets conduct, specifically 'conduct performed with serious criminal intent,' rather than speech protected by the First Amendment." United States v. Ackell, 907 F.3d 67, 74 (1st Cir. 2018).

In light of the foregoing, the court determined that the court should adopt a narrower definition of "harass" in line with defendant's objection. In Shrader, the Fourth Circuit did not have benefit of the new language of the statute, nor the extensive discussion of First Amendment issues in Fleury and Yung. In addition, the government did not cite, and this court has not found, any case applying the present version of the statute to circumstances in which a defendant was merely "persistently bothering or disturbing" a victim, even though Shrader defined harassment to include such terms. 675 F.3d at 310. Thus, out of an abundance of caution, the court sustained defendant's objection.

The court also maintained a narrow definition of "intimidate," upon further questioning by the jury. In particular, the jury asked the following question in a letter sent to the court during

11

deliberations: "For Element 3, under intimidate, is fear or apprehension of <u>injury</u> physical, emotional, financial, etc?"  In addressing this jury letter with the court, defendant took the position that the definition must be limited to physical injury.  While the government agreed with the court that including emotional injury was redundant, it argued that the definition should be broader than "just physical" injury, and that it would "include at a minimum financial" injury, relying upon <u>Shrader</u>.  In response to this question, the court adopted defendant's proposed construction and instructed the jury that "intent to intimidate means to act with the specific intent to cause Ken Lane substantial emotional distress by putting Ken Lane in fear or apprehension of physical injury," and to "read the word injury there to include physical injury," but "not the other modifiers that are referenced in the [jury] letter including emotional, financial, et cetera."

In agreeing with defendant's proposal for this instruction, the court reasoned that the narrower construction was more consistent with the recent decisions in <u>Yung</u> and <u>Fleury</u>, and that <u>Shrader</u> did not involve intent to intimidate through fear of financial injury, but rather fear of physical injury.  Indeed, in addressing the defendant's overbreadth argument in that case, the court in <u>Shrader</u> recognized: "Whatever other definitions one might hypothesize for the meaning of 'harass or intimidate,' there can be little doubt that Shrader's stalking falls within the conduct the statute is intended to proscribe." 675 F.3d at 312.  In particular, "Shrader's own words evince[d] his intent to 'cause substantial emotional distress,' to [the victims] and to place them 'in reasonable fear of <u>the death of, or serious bodily injury</u> to' themselves and 'members of their immediate family.'" <u>Id.</u> (emphasis added). Accordingly, out of an abundance of caution, the court instructed the jury that fear of injury must comprise fear of physical injury.

12

## CONCLUSION

For the foregoing reasons, the court granted the government's motion in limine seeking introduction of evidence regarding the subject communications (DE 57), and denied defendant's motion in limine regarding the same (DE 60). The court also sustained defendant's objections to portions of the court's jury instructions, as set forth herein.

DATED, this the 2nd day of March, 2023.

LOUISE W. FLANAGAN
United States District Judge